All right. Can we please call the next case? Yes, Your Honor. Last case is Enri Ramsey. Christopher Burke for Applin. And R. Christopher Reed for Apples. All right. Good morning again, Mr. Burke. Would you like to reserve any time? Good morning. Thank you. Yes, five minutes, please. All right. Thank you. One is a debt, not a debt. What I'm proposing here, there's two issues. Was this a consumer debt, and was it substantially justified? Because there was no money ever given to the debtor, and the only thing they're going after are her homes, my argument, it's a consumer debt. Her home is a debt. That's the only thing she took out. That's the only money that she's been involved in. And the court erred in saying that this is not a consumer debt. It only looked at the complaint and the allegations in the complaint, and I'm saying it should go beyond that. And the court found since no money was paid, the only thing she has is a house. Creditor admits she wants to homestead the house and try it over and over and over. And because of the state court default judgment, she's been rebuffed at every turn. So the first point is, one, this is a consumer debt. And then second, were they substantially justified in bringing it? They knew they never gave her any money. They knew there was no contract. They knew they had no evidence, and the trial proved it. And how can a complaint be substantially justified when the person bringing it knows all of these facts? So I would ask that the court reverse the decision of the bankruptcy court and order that, one, this is a consumer debt, and two, creditor didn't prove that it was substantially justified in bringing it. I think the way it played out, the burden ended up being more on the defendant and substantial justification. I was involved in a published case in 2014 to chart them, dealt with Section 523D, and it did say that the burden was on the creditor's show it was substantially justified, and that wasn't done here. And so I would ask that the court reverse the decision of the bankruptcy court unless there's any questions. So this consumer debt issue is really puzzling me, I have to admit, because typically when we have one of these cases, there isn't a question that there's a debt. It's just like, what kind of debt is it? Is it consumer or is it business? And it's pretty straightforward, right? But here you have a finding that there was no debt. So I struggle with, where do I look to determine whether or not it was a debt? If I look at the complaint, like you said and like the court found, it's a business transaction that was being asserted in the complaint, right? A partner, you know, agreement to flip out, you know, redo and sell and buy and sell and flip houses, right? But that debt wasn't established. So then do I look to the fact that her only debt was her home mortgage on this property? That's not a debt that was at issue in the litigation, though. Yeah. The Ninth Circuit says look at the purpose of the debt, and that goes back to my argument. Right. The only debt was her house, but she's trying to homestead, which the court said she lives there. And so, yeah, that is the dilemma. And obviously the court knows which side I'm on. If there was no debt, the only thing they're attacking is her home, whether she could homestead it or not, the home she lives in and she's been trying to protect. And the purpose of that was to buy a house. And so I'm asking the court to follow the Ninth Circuit and what was the purpose of the debt and the only debt out there is her home. But it is a struggle. I agree. It's your burden, and I'm trying to figure out is it a question of fact or is it just an interpretation of law that then we have de novo review over. Don't you have to prove something? And when he finds that it's not a consumer debt, is it because he applied the wrong standard? Because he should have looked not at what the complaint said and what the theory of recovery was, but he should have looked at no debt was incurred, so therefore it has to be a consumer obligation. I mean, that's basically what you're arguing, isn't it? Yes, that's what I'm arguing. I mean, the fact that they engaged in an alleged transaction makes no difference because if you don't have a transaction, then everything has to be consumer. Is that the result that you would want? That's what I'm hoping, yes. Okay. I'm just trying to make sure I got it. I, too, am confused by the consumer debt piece. And that in determining which debt we should look at, I mean, do we, you know, it was the alleged debt. You know, she was alleged to have done something, and it was determined that there is no, that alleged debt is not a debt. But isn't the alleged debt the one we should look at to see whether it's consumer or not, not some other debt? I see where you're going with that. And, again, that is the struggle. But I would go back to the Ninth Circuit. What was the purpose of the debt? Not the allegation because there was no debt, so you can't say what were the allegations in the complaint. We have to look at the purpose. But you look at the complaint to determine whether they're suing on something related to a consumer debt. And it says, no, there is no debt, you know, so there's no consumer debt. But there's maybe no business debt. But what the complaint was, you get the fees if you bring a complaint and don't succeed. And in that complaint, it has to be for a consumer debt. Correct. And even in their complaint, though, they constantly say she bought a house, she's living there, she's squatting there, she won't leave. So they're acknowledging that any allegation of money went to purchase a house that she's living in. So I would use that connection to say it's a home and it's a consumer debt. Any other questions? Thank you. Thank you. May it please the Court. Christopher Reed on behalf of Applebee's, Eugene Tamarello, and Shamrock Painting. This is not only a unique case legally, but a unique case factually. Because as you heard in earlier arguments, you have two state court judgments disqualifying her homestead based upon fraud. So the Court may wonder, well, gee, Mr. Reed, you had two fraud judgments, why didn't you bring a Rooker-Feldman? And it's because, as Judge Nakagawa cites in his decision, there is a companion bankruptcy involving Ms. Ramsey's fiancé partner, Greg Chambers. And in that case, Judge Nakagawa had said, you do have two fraud judgments, but I don't find that it rises to the level that I'm going to give you plaintiff's preclusion, I'm going to make you go prove that. And that non-dischargeability continues. And he refers to that in his decision. So when this Court goes to look at the decision, under Liametti, what we say is, did he use the right standard? Under 523D, clearly Judge Nakagawa used the correct standard. And once we know that he used the right legal rule, is his decision illogical, implausible, or without any support in the record? And the answer is, no. Judge Nakagawa, as we've heard in other cases, dealt in suspenders very detailed in his analysis. And what he said is, first of all, on this consumer debt issue, it's not that there was no money loaned to buy Applees. It's that he found the contracts in question were only signed by Mr. Chambers, which was an interesting question until two days ago in Bartenwerfer, when the Supreme Court said, well, if you loan it to, in that case it was husband and wife, in this case it's fiancé, other partners, Ms. Ramsey would have been held liable under that standard. It doesn't matter if the money made it to her, as Judge Nakagawa found in his findings of fact from trial. It doesn't matter if it made it to her. It's just a matter of was that money loaned. And it was clearly loaned. And Ms. Ramsey testified at trial, well, I financed the house under my mortgage, under a traditional mortgage, and if you loaned money to Mr. Chambers, hey, I'm not part of that. That doesn't change the fact that it was not a consumer debt. All of the testimony at trial was Applees loaned money as part of a joint venture to flip houses. And then Ms. Ramsey, against Applees' understanding and knowledge, moved into this house. She did not move into the 1207 property. She did move into the 1201 property against Applees' understanding and agreement. And so for that reason, Judge Nakagawa was very detailed in saying there's no hint, no suggestion or even hint of a consumer debt that came up at trial. It wasn't argued, no evidence of that, nothing. He made very clear there's nothing in what was testified to that said that the debt or the monies loaned in question were consumer in nature. The only assertion made by appellant was that's not my debt. I didn't sign that contract. Only Mr. Chambers signed that contract. And so the burden of proof on that question, Your Honor, is borne by the appellant. They did not carry that burden. Judge Nakagawa made detailed findings. And that's enough. And so we don't even get to substantial justification unless we get past that consumer debt issue. And we don't. But if we get to substantial justification, Judge Nakagawa went through it and said three separate bases he found it was substantially justified. Number one, debtor challenged the substantial justification at the outset of the case. And the court said, I find it's substantially justified as pled. There's enough here. And once again, remember, Judge Nakagawa had not only two state court judgments finding fraud. He also had a declaration from the appellant saying I was a party to this transaction, a declaration that she then contradicted at trial and said I was not a party to this transaction. So there was no question but that. There was substantial evidence enough for this matter to go to trial. And Judge Nakagawa said, you know what? Everybody, appellant, appellees decided this case needed to be decided based upon the facts at trial. And they went to trial. And the Ninth Circuit has said, just because you're not ultimately, to your point, Judge Corbett, just because you're not successful at trial, that doesn't rise to the level of necessarily saying it's not substantially justified. And, in fact, the court said in Stein, there's no presumption that a creditor was not substantially justified simply because it did not prevail. There's no question. We didn't prevail at trial. For whatever evidentiary and witness reasons we had, we did not prevail in meeting that clear and convincing standard at trial. But that doesn't mean, as Judge Nakagawa says, it was not substantially justified based upon the prior judgments, based upon the evidence, based upon the declaration from the appellant. There was more than sufficient justification to have brought this action. And unless you have any other questions, I would submit it on the books. So I guess the only question I was trying to get to on this section is that you believe that his finding, that it was substantially justified, is a issue of not an issue of fact, not an issue of law, but it's a piece of discretion standard that we apply? Your Honor, and, in fact, I would say under Leonetti, once we get to that point, what it says is it's a clearly erroneous standard. And so this is one of those things where I take my hat off and hat in hand and say, we gave you the wrong standard in our brief because Leonetti says it's a clearly erroneous standard. And under that circumstance, there has to be no evidence to support his decision in the record, and he found it, and then there's whatever the evidence is to support it. Absolutely, Your Honor. As this court had said in 2020 in Leonetti, it has to be illogical, implausible. There has to be nothing that would support it. And he's more than adequately justified his decision. All right. Thank you. Thank you. Thank you, Christopher Burke, again, for the talent. And Appley's own brief actually decides the issue. As pointed out in the reply, they classified the nonexistent debt as a remodeling debt on Ramsey's home, and that's in their opening brief, page 3, 6, and 12. So by saying it's a remodeling debt on her home, they're admitting it's a consumer debt. Second, this court in the Bushkin case, it's only a Westlaw site, said it determined the purpose at the time the debt was incurred. Again, the only debt that was ever incurred was the house. But I think we can short circuit the consumer debt argument by the judicial admission of Tumbarello. And then it comes down to substantial justification. And the fact that the court didn't dismiss the complaint. Counsel, let's go back just for a second on the consumer debt. Of course. Okay. It can be a remodeling loan on her home, but couldn't it be more than that, a remodeling loan on the home that she intended to flip? I mean, it can be her home, but still be a commercial transaction as opposed to a consumer transaction, even though it's a home, right? Except the court held that Ramsey, quote, testified that she originally purchased the home with the intention that she would live there with Chambers. And that's on page 9 of my brief. And it's second ER, page 74, line 3 and 4. So the court found she purchased it to live there, not to flip. Did it find that or did it say that's what her testimony was? That's what she asserted rather than that it determined that she never intended to enter into the transaction? Good question. The court says she testified to that and the court didn't deny that. And, in fact, I think later on the court admitted that that was the purpose was for her to live in it. And so and she was living in it. And creditor admits in its complaint she's living there and that she was trying to homestead it. So all the evidence is, hey, I went and bought a house and all of a sudden I get sued and there's default judgments. And this argument that the state court found all this fraud is nonsense because there was never any evidentiary hearing or trial in state court. And that's something the bankruptcy court found. So I don't envy your decision here, but I would say we look to the purpose of why she got the property. It was a home. And the fact that they admit it was the remodel, which is would make it a consumer debt because she's living there. And that bringing this complaint wasn't substantially justified because they knew from the outset she never got money. She never signed the contract. And they shouldn't have pursued it. If there's no further questions, I'll. Thank you very much. Thank you. All right. So this matter is submitted and that brings us to the end of our calendar. All rise. This court is adjourned.
judges: Brand, Gan, and Corbit